**Andrew Stephenson HORNE,**
**Appellant,**

v.

**PRECISION CARS OF LEXINGTON,**
**INC., Appellee.**

No. 2002–SC–0104–DG.

Supreme Court of Kentucky.

Aug. 25, 2005.

As Modified Sept. 22, 2005.

Avery L. Stanley, Vanceburg, Marilee Stephenson, Portsmouth, OH, Counsel for Appellant.

Andrew N. Clooney, O'Bryan, Brown & Toner, Mark Edward Hammond, Louisville, Counsel for Appellee.

COOPER, Justice.

On May 13, 1998, Appellant, Andrew Stephenson Horne, then eighteen years old, injured his wrist when he tripped and fell on the business premises of an automobile dealership owned and operated by Appellees, Precision Cars of Lexington, Inc.,

and Tom Wood Pontiac, Inc., a general partnership d/b/a Courtesy Pontiac Acura (hereinafter "Courtesy"). He brought this action in the Fayette Circuit Court asserting that the negligence of Courtesy or its employees was a substantial factor in causing his fall and resulting injury. The Fayette Circuit Court entered a summary judgment in favor of Courtesy and the Court of Appeals affirmed. We now reverse the Court of Appeals and remand this case to the Fayette Circuit Court with directions to vacate the summary judgment and grant Appellant a trial by jury on the allegations of his complaint.

On May 13, 1998, Appellant drove his own vehicle onto Courtesy's premises, parked at the rear of the showroom building, and entered the showroom through the rear door. He met Joshua Spencer, one of Courtesy's salespersons, and advised Spencer that he was interested in possibly purchasing a Pontiac Firebird. Spencer led Appellant out the front door of the showroom, where a red Firebird was parked just to the right of the showroom door. The vehicle had been backed into its parking place so that the left (driver's) side was immediately adjacent to the showroom door. Appellant got into the driver's seat and Spencer walked around the car and got into the front passenger seat. Spencer suggested that Appellant test-drive the vehicle but informed Appellant that, because of insurance requirements, he (Spencer) would have to drive the vehicle off the lot. Both men then exited the Firebird, intending to exchange positions in the vehicle. Appellant walked around the rear of the vehicle, still giving his attention to Spencer, who was extolling the virtues of T-tops and other possible accessories. As he rounded the right rear of the Firebird, Appellant tripped on a concrete parking barrier extending outward from under the vehicle, fell, and injured his wrist.

If the previous operator of the Firebird had parked it properly, both rear tires would have been touching the parking barrier, which would then have been visible from the left side of the vehicle and would not have extended outward past the width of the vehicle. However, the previous operator had parked the Firebird too far to the left and at an angle, so that only its right rear wheel was touching the barrier. The left rear wheel was to the left of and past the barrier, concealing the barrier's presence from persons observing the vehicle from its left side. Because the vehicle was parked too far to the left, the right side of the barrier projected outward from under the right rear of the vehicle.

 Appellant testified in his discovery deposition that he had never previously visited Courtesy's lot, that he had not noticed any parking barriers when he parked at the rear of the showroom, and that he did not see the barrier in question before he tripped on it and fell. Both the trial court and the Court of Appeals concluded that the barrier was an "open and obvious" hazard, and that Courtesy thus had no duty to warn or otherwise protect its customers, including Appellant, against tripping on it.

"The standard of review on appeal of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law." *Pearson ex rel. Trent v. Nat'l Feeding Systems, Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). Summary judgment is only proper when it would be impossible for the plaintiff to produce any evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky.1991). In ruling on a motion for summary judg-

ment, the court is required to construe the record in a light most favorable to the party opposing the motion. *Id.* *Cabinet for Families and Children v. Cummings,* 163 S.W.3d 425, 427–28 (Ky. 2005). The question is whether the trial court and the Court of Appeals properly held as a matter of law that the concrete parking barrier on which Appellant tripped and fell was so obvious to him that Courtesy owed no duty to warn or protect him against it.

■ Appellant's status with respect to Courtesy was that of an invitee. "An invitee enters upon the premises at the express or implied invitation of the owner or occupant on business of mutual interest to them both, or in connection with business of the owner or occupant." *Scuddy Coal Co. v. Couch,* 274 S.W.2d 388, 389 (Ky. 1955). *See also* Restatement (Second) of Torts ("Restatement") § 332(1), (3) (1965). Sections 343 and 343A of the Restatement provide as follows with respect to the special liability of landowners to invitees:

§ 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

§ 343A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land *whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.*

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

(Emphasis added.)

"Known" means "not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." *Id.* § 343A cmt. b. "Obvious" denotes that "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id.* Concerning the last clause of section 343A(1), *i.e.,* when the possessor should anticipate the harm, comment f to section 343A explains:

There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. . . .

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. . . .

Comment f also contains the following illustrations:

2. The A Department Store has a weighing scale protruding into one of its

aisles, which is visible and quite obvious to anyone who looks. Behind and about the scale it displays goods to attract customers. B, a customer, passing through the aisle, is intent on looking at the displayed goods. B does not discover the scale, stumbles over it, and is injured. A is subject to liability to B.

. . .

4. Through the negligence of A Grocery Store a fallen rainspout is permitted to lie across a footpath alongside the store, which is used by customers as an exit. B, a customer, leaves the store with her arms full of bundles which obstruct her vision, and does not see the spout. She trips over it, and is injured. If it is found that A should reasonably have anticipated this, A is subject to liability to B.

 Our case law regarding premises liability has developed within three distinct categories. The first category holds that the owner of a business premises has *no duty* to protect invitees from injuries caused by "*natural* outdoor hazards which are as obvious to an invitee as to an owner of the premises." *Standard Oil Co. v. Manis*, 433 S.W.2d 856, 858 (Ky.1968) (snow and ice) (emphasis added). *See also PNC Bank, Ky., Inc. v. Green*, 30 S.W.3d 185, 186 (Ky.2000) (same); *Corbin Motor Lodge v. Combs*, 740 S.W.2d 944, 946 (Ky. 1987) (same) (holding that adoption of comparative negligence and abrogation of assumption of risk defense did not mandate a different result, because negligence is immaterial if there is no duty); *Rogers v. Prof'l Golfers Ass'n of Am.*, 28 S.W.3d 869, 872 (Ky.App.2000) (wet grassy hillside). An exception to this rule occurs when the owner undertakes protective measures that, in fact, heighten or conceal the nature of the hazardous condition, thus making it worse. *Estep v. B.F. Saul Real Estate Inv. Trust*, 843 S.W.2d 911, 914 (Ky.App.1991), *as explained by PNC Bank*, 30 S.W.3d at 187. This category has no relevance to the case *sub judice* because the hazard here, while outdoors, was not "natural."

 The second category holds that if the invitee was injured because of an encounter with a foreign substance or other dangerous condition on the business premises, the owner can avoid liability by proving that the hazard was not caused by the owner or the owner's employees *and* that the hazard was not present for a sufficient period of time before the accident to give the owner notice to remove it or to warn invitees of its presence. *E.g., Bartley v. Educ. Training Sys., Inc.*, 134 S.W.3d 612, 615–16 (Ky.2004); *Martin v. Mekanhart*, 113 S.W.3d 95, 98 (Ky.2003); *Lanier v. Wal–Mart Stores, Inc.*, 99 S.W.3d 431, 434–37 (Ky.2003). If the actions of the owner or the owner's employees created the hazardous condition, notice is immaterial. *Wal–Mart Stores, Inc. v. Lawson*, 984 S.W.2d 485, 487 (Ky.App.1998) (quoting *Cumberland College v. Gaines*, 432 S.W.2d 650, 652 (Ky.1968), *overruled on other grounds by Lanier*, 99 S.W.3d at 436). There is no dispute that Courtesy installed the parking barrier on which Appellant tripped. Spencer's advice to Appellant that customers could not operate dealership vehicles on the premises is substantial evidence that one of Courtesy's employees parked the Firebird that partially concealed the barrier's presence. Thus, notice is not an issue in this case.

 The third category involves hazards caused by the owner. If the hazard is "known or obvious to" the invitee, the owner has no duty to warn or protect the invitee against it. These are the cases contemplated by Restatement § 343A, *supra*, and are best exemplified by *Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526 (Ky.1969). In *Bonn*, a customer of an

automobile service center fell into a "grease pit," an open basement in which employees stand while servicing the undersides of customer's vehicles. Although Bonn had never been in this particular shop, he admitted that he was familiar with such businesses and knew they commonly contained grease pits. Noting that the risk was inherent in the nature of the activity, itself, that the pit was neither unusual nor hidden (it was two car-lengths long, bisected by a metal bridge, and ridged around its edges), and that the area was well lighted, our predecessor court held that the premises owner "breached no duty to [the plaintiff] which was causative of the harm he suffered." *Id.* at 529.

██ In *Johnson v. Lone Star Steakhouse & Saloon of Kentucky, Inc.,* 997 S.W.2d 490 (Ky.App.1999), the plaintiff was a customer in a restaurant that provided peanuts to its customers and permitted them to toss empty shells onto the floor. Johnson was in the restaurant for more than two hours and admitted that she was aware of the peanut shells on the floor and considered them a hazard. Upon attempting to exit the restaurant after finishing her meal, she slipped on the peanut shells and fell. Citing *Bonn,* the Court of Appeals held that the owner of the premises owed no duty to the plaintiff because the hazard was both known and obvious to her. *Id.* at 491.[1] In such cases, the plaintiff's admission that the hazard was both known and obvious to him or her pertains not only to the issue of contributory fault, but also to whether the hazard was so known and obvious as to obviate any duty on the part of the owner to warn or protect the invitee against the hazard. *PNC Bank,* 30 S.W.3d at 187.

██ In affirming the summary judgment against Appellant, the Court of Appeals relied primarily on *Bonn* and *Lone Star.* However, unlike the grease pit in *Bonn* and the peanuts in *Lone Star,* there was evidence that the parking barrier in this case was neither known nor obvious to Appellant. "In pedestrian falldown cases arising out of defects in or obstructions on the walking surface the visibility factor is vital." *Jones v. Winn–Dixie of Louisville, Inc.,* 458 S.W.2d 767, 769 (Ky.1970). While parking barriers, curbing, division strips, and other such obstructions commonly used in parking areas to protect automobiles from property damage (and buildings from automobile damage) are not *per se* dangerous or unsafe, they can become so when their presence is hidden or otherwise not readily apparent to invitees using the premises. In both *Cantrell v. Hardin Hospital Management Corp.,* 459 S.W.2d 164, 165 (Ky. 1970), and *Downing v. Drybrough,* 249 S.W.2d 711, 712 (Ky.1952), the fact that the accident occurred at night in a poorly-lighted parking lot was held to create a jury question as to liability. *See also Holliday v. Great Atl. & Pac. Tea Co.,* 314 F.2d 682, 684–85 (4th Cir.1963) (yellow paint had peeled off curbing and lighting was inadequate); *Geraghty v. Burr Oak Lanes,* 5 Ill.2d 153, 125 N.E.2d 47, 52 (1955) (railroad ties used as parking barriers were obscured by weeds); *McFarland v. Sears, Roebuck & Co.,* 91 S.W.2d 615, 620 (Mo.Ct.App.1936) (inadequate lighting); *Nary v. Parking Auth. of Town of Dover,* 58 N.J.Super. 222, 156 A.2d 42, 45 (Ct.App.Div.1960) (white line observed on previous visit had been replaced with white

---

1. It is unclear from the facts recited in *Lone Star* whether the plaintiff had any alternative to walking across the strewn peanut shells. If not, then *Lone Star* is substantially different on its facts from *Bonn,* where the plaintiff

simply stepped into an open pit instead of walking around it, and is more akin to the situation described in Restatement § 343A cmt. f, *supra. Cf. Wallingford v. Kroger Co.,* 761 S.W.2d 621, 624 (Ky.App.1988).

parking barrier); *H.E. Butt Grocery Co. v. Bradfield*, 396 S.W.2d 254, 255–56 (Tex. Civ.App.1965) (asphalt ridge between sidewalk and parking lot was same color as asphalt parking lot). *Compare Mershon v. Gino's, Inc.*, 261 Md. 350, 276 A.2d 191, 194 (1971) (broad daylight, bumpers painted yellow to contrast with black asphalt pavement, openings or walkways between bumpers, and plaintiff admitted that nothing obstructed her view).

In *Wilkinson v. Family Fair, Inc.*, 381 S.W.2d 626 (Ky.1964), the plaintiff was descending some steps into a basement and, upon rounding a corner at the landing, tripped on an abutment extending out level with the floor and covering almost all of the right portion of the upper step. "Though the stairway was well lighted, the lighting is immaterial, for the obstacle which caused the fall was completely concealed from the view of appellant until she had rounded the wall." *Id.* at 627. *See also Winn–Dixie Louisville, Inc. v. Smith*, 372 S.W.2d 789, 792 (Ky.1963) ("While appellee was required to exercise ordinary care for her own safety, such did not require her to look directly down at her feet with each step taken."). The closest case factually to the case at bar is *Magee v. Federated Department Stores*, 187 Ga.App. 620, 371 S.E.2d 99 (1988), where the plaintiff tripped over a six-inch-high concrete barrier used as an enclosure for temporary storage of shopping carts. A parked car partially obscured the enclosure from the plaintiff's view, but the barrier projected out approximately two feet from the rear of the car. The plaintiff was momentarily distracted by another vehicle being driven in her direction and tripped over the barrier. *Id.* at 99. While *Magee* did not refer to Restatement § 343A, it did hold the owner responsible "where the distraction is placed there by the defendant or where the defendant in the exercise of ordinary

care should have anticipated that the distraction would occur." *Id.* at 100.

We conclude from this analysis that the parking barrier on which Appellant tripped and fell was not "known or obvious to" Appellant. In fact, its presence was partially concealed from him by the manner in which a Courtesy employee had parked the Firebird. Even if that were not so, the facts of this case would fall within Restatement § 343A, comment f, because Courtesy would expect that a customer in the process of examining its wares while they were being touted by one of its sales staff "may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Id.*

Accordingly, we reverse the Court of Appeals and remand this case to the Fayette Circuit Court with directions to vacate its summary judgment and grant Appellant a trial by jury on the allegations of his complaint.

LAMBERT, C.J.; GRAVES, JOHNSTONE, and SCOTT, JJ., concur.

ROACH, and WINTERSHEIMER, JJ., concur in result only.